IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DWALIUES DEON CARTER                                                   PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:12cv243-MTP

MARY ANN HAYES, ET AL.                                          DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the court on the Motion for Summary Judgment [44] filed by the Defendants. Having reviewed the submissions of the parties and the applicable law, the court finds that the Defendants' Motion for Summary Judgment [44] should be granted and that this action should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Dwaliues Deon Carter, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on April 10, 2012. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges a claim against Defendant Deputy Roy Loveday for excessive force and a claim against Defendant Mary Ann Hayes for the denial of adequate medical treatment in violation of the Fourteenth Amendment.[2] *See* Omnibus Order [31].

Plaintiff's claims arose while he was housed at the Hinds County Detention Center (the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on September 25, 2012.
[2] "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare*, 74 F.3d at 648 (holding that the subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

1

"Jail") as a pretrial detainee, where he is currently incarcerated. Plaintiff seeks monetary damages for pain and suffering.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section

1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

*Excessive Force*

Plaintiff alleges a claim against Defendant Deputy Roy Loveday for excessive force. Specifically, he claims that on February 19, 2012, Deputy Loveday sprayed him with pepper spray. Plaintiff claims he was mopping water off his cell floor and Deputy Loveday ordered him to pass the mop back under his cell door. When Plaintiff told Deputy Loveday the mop would not fit under the door, he became angry and sprayed Plaintiff with pepper spray.

Deputy Loveday claims he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Deputy Loveday is "entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)).  In the recent decision of *Pearson*, the Supreme Court receded from its holding in *Saucier v. Katz*, 533 U.S. 194 (2001) (setting forth original two-prong test above), holding that "while the sequence [of the two-prong test] set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  *Pearson*, 129 S. Ct. at 818.  "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions."  *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (*en banc).*  "Objective reasonableness is a matter of law for the courts to decide, not a matter for the jury."  *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal citations and quotations omitted).  The "core judicial inquiry" when deciding whether an excessive force claim violates the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

4

cause harm." *Hudson*, 503 U.S. at 7.[3] Thus, a prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Id*. at 4; *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1177 (2010) (reversing district court's dismissal of prisoner's excessive force claim based entirely on its determination that his injuries were "de minimis," reasoning that it was "at odds with *Hudson'*s direction to decide excessive force claims based on the nature of the force rather than the extent of the injury").

Some of the relevant objective factors in the inquiry of the application of excessive force include: "1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of the forceful response." *Baldwin v. Stalder*, 137 F.3d 836, 838-39 (5th Cir. 1998) (internal citations omitted).

According to the incident report and Deputy Loveday's sworn affidavit, on February 19, 2012, Plaintiff had the mop that was used for cleaning up blood from a fight he had started earlier. Plaintiff began threatening Loveday and the trustees. Loveday tried reasoning with Plaintiff but he would not listen. Because Plaintiff was acting violent and had a mop, it became "obvious the mop had to be taken away." Plaintiff charged Loveday, and Loveday sprayed him with mace. Plaintiff continued to attack Loveday with the mop. Loveday pushed the door shut and waited a minute. Plaintiff was then brought out and given milk to wash his eyes and was taken to booking for a shower. *See* Ex. B to Motion [44-2]. As a result of the incident Plaintiff pleaded guilty to threatening officers and to possession of a weapon, and received lockdown for a total of ninety days. *Id*.

---

[3]The analysis for an excessive force claim is the same whether it is brought by a pretrial detainee or a convicted inmate. *See Valencia v. Wiggins*, 981 F.2d 1440, 1446-47 (5th Cir. 1990).

5

In his Response [49] to the Motion [44], Plaintiff denies taking the mop, stating he already had it and was using it to clean up water, and denies having an altercation with Lovelady. Plaintiff also places significance on the fact that there was no "use of force" report, claiming there would have been one had the altercation occurred. As for the infraction forms (Exhibits 2 and 3 to Exhibit B to Motion [44-2]) where Plaintiff pled guilty to refusing to hand over the mop and pled guilty to threatening deputies with bodily harm with the mop, Plaintiff does not deny the charges, but claims they are irrelevant to this matter and should be excluded.

Based on the record before the court, including the undisputed guilty pleas contained in the infraction forms wherein Plaintiff plead guilty to threatening the deputies with the mop, the court concludes that Loveday's action of spraying Plaintiff with mace was objectively reasonable. Accordingly, Loveday is entitled to qualified immunity. *See,* 305 F.3d at 323; *see also Skinner v. Hinds Cnty., Miss.*, No. 3:10cv358–DPJ–FKB, 2012 WL 3913092, at *4 (S.D. Miss. Sept. 7, 2012) (holding that defendants were entitled to qualified immunity as to plaintiff's excessive force claim, where plaintiff alleged that defendants sprayed him with pepper spray; plaintiff was not in handcuffs and there is no suggestion that he had stopped resisting arrest).

Moreover, to the extent Plaintiff alleges a claim against Loveday in his official capacity, Plaintiff has failed to establish that Hinds County had a policy, custom or practice that was the "moving force" behind the alleged excessive force. *See Monell*, 436 U.S. at 694.

*Denial of Adequate Medical Treatment*

Plaintiff alleges a claim against Defendant Mary Ann Hayes for the denial of adequate medical treatment in violation of the Fourteenth Amendment. Specifically, he claims that another deputy escorted him to the medical office after he was sprayed with pepper spray, and

Nurse Hayes refused to provide him with medical treatment.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the

7

"best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff testified that he was given milk to wash his eyes by another deputy after he was sprayed with mace. Further, the affidavit of Deputy Loveday reflects that Plaintiff was given milk to wash his eyes and was then taken to booking for a shower. *See* Ex. B to Motion [44-2]. It is unclear what other medical treatment Plaintiff desired or what treatment he thought was necessary. In his Response [49] to Defendants' Motion [44], Plaintiff addresses Defendants' argument in one sentence: "It's not the deputy job to treat a inmate once force has been used, it's the medical staff job, and Nurse Hayes clearly violated Plaintiff Fourteenth Amendment Constitutional Right." Response [49] at 3.

Regardless of who provided the treatment, Plaintiff was allowed to rinse his eyes with milk and then take a shower. Plaintiff has failed to show that Nurse Hayes was deliberately indifferent to his serious medical needs. Moreover, to the extent Plaintiff alleges a claim against Hayes in her official capacity, Plaintiff has failed to establish that Hinds County had a policy, custom or practice that was the "moving force" behind the alleged deliberate indifference. *See Monell*, 436 U.S. at 694. Thus, Nurse Hayes is entitled to judgment as a matter of law.[4]

## CONCLUSION

Based on the foregoing, Defendants are entitled to judgment as a matter of law and this

---

[4] Because the court concludes that Plaintiff failed to establish a constitutional violation by Nurse Hayes, it declines to address her qualified immunity argument.

action should be dismissed.[5]  Accordingly,

       IT IS, THEREFORE, ORDERED:

       That Defendants' Motion for Summary Judgment [44] is GRANTED and that this action is dismissed with prejudice.  Plaintiff's Motion in Limine [46] is denied as moot.

       A separate judgment will be entered.

       SO ORDERED this the 3rd day of May, 2013.

                                      s/ Michael T. Parker
                                      United States Magistrate Judge

---

[5]Because the court concludes that Defendants are entitled to judgment as a matter of law as to Plaintiff's constitutional claims, it declines to address the arguments regarding exhaustion.